THOMPSON (KING v.). See Case No. 7,807.

---

## Case No. 13,964.

### THOMPSON v. KNICKERBOCKER LIFE INS. CO.

[2 Woods, 547; [1] 5 Ins. Laws J. 817; 5 Bigelow, Ins. Cas. 8; 3 Cent. Law J. 561; 3 Am. Law T. Rep. (N. S.) 370; 1 Cin. Law Bul. 210.]

Circuit Court, S. D. Alabama.    June Term, 1876.[2]

INSURANCE — LIFE — PREMIUM NOTES — PAYMENT MADE CONDITION PRECEDENT—ELECTION —CUSTOM.

1. The policy issued by a life insurance company provided that promissory notes payable during the year might be given by the assured for portions of the annual premium, and declared that, in case such notes were not paid at maturity, the policy should then and thereafter be void, without notice to any party or parties interested therein, and the notes also contained the same stipulation. *Held*, that the payment at maturity of the notes given for the premium was a condition precedent to the continuance of the policy, and on a failure to pay the notes the policy became void.

2. Where it was the custom of a life insurance company to give notice to the assured that the premium or premium note was about falling due, a neglect on the part of the company to give such notice will not save the policy from forfeiture, if the assured fails to pay the premium or premium note when due, unless the failure to give notice was fraudulent, and for

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 104 U. S. 252.]

the purpose of throwing the assured off his guard.

[Distinguished in Briggs v. National Life Ins. Co., 11 Fed. 459.]

3. Where a policy of life insurance, and a premium note, contained the stipulations set out in the first head-note, and the premium note was not paid at maturity: *Held*, that the insurance company was not bound to elect whether or not the policy should be forfeited, or to give any notice of such election.

4. Where it was the custom of a life insurance company not to exact punctual payment of its premium notes, but to allow thirty days' grace thereon, the company is not bound to pay the insurance money if the assured dies within the thirty days without having paid the premium note.

[Cited in Marston v. Massachusetts Life Ins. Co., 59 N. H. 94.]

Action at law.    Heard on demurrer to replications.

This suit was brought upon a policy of insurance, dated January 24, 1870, whereby the Knickerbocker Life Insurance Company, in consideration of the sum of $410 paid in hand by Ruth E. Thompson, and a like sum to be paid by her on or before the 24th of January, in every year, during the continuance of the policy, did insure the life of John Y. Thompson, in the sum of $5,000, for the benefit of said Ruth E. Thompson, his wife. The complaint averred the death of John Y. Thompson, on November 3, 1874, while the policy was in force, that proof of death had been made to the company, and that all the terms and conditions of the policy had been complied with, and prayed judgment for the insurance money and interest. To this complaint the defendant, besides the general issue, pleaded two special pleas, which, however, set up in effect the same defense.

The defense was in substance as follows: That the payment of the premium of four hundred and ten dollars on or before the 24th of January of each year, during the life of John Y. Thompson, was a condition precedent to the continuance of the policy. That by the terms of the policy an annual credit of a portion of the premium was provided for, and the policy contained a condition that the omission to pay the annual premium on or before noon of the 24th day of January of each year, or the failure to pay at maturity any note, obligation, or indebtedness for premium or interest due under said policy, should then and thereafter cause said policy to be void without notice to any party or parties interested therein. That the annual premium was not paid on or before January 24, 1874. and the defendant thereupon gave said Thompson time for the payment of the premium upon the condition named in the note to be hereafter mentioned, and took certain promissory notes of said Thompson for the instalments of the premium, one of which was as follows: "$100. New York. Jan. 24, 1874. Nine months after date, without grace, I promise to pay the Knickerbocker Life Insurance Company, one

hundred and nine dollars, at Mobile, Alabama, value received, in premium on policy No. 2334, which policy is to be void, in case this note is not paid at maturity, according to contract in the said policy." That the terms and conditions of said note formed a part of the contract for the extension of the time given for the payment of said annual premium, that the note was not paid at maturity nor in the lifetime of John Y. Thompson, nor has it been paid since; and that said policy became null and void from and after the 24th day of October, 1874, when said note fell due, and that said John Y. Thompson died after said date, and the amount of said note has never been paid to the defendant.

The plaintiff, as authorized by section 2564 of the Revised Code of Alabama, filed four replications to these pleas. She says: First. That the payment of said note was not a condition precedent to the continuance of the policy; that Thompson had the money in hand to pay the note, and intended to pay it, but before the maturity thereof he was taken violently ill, and before and at the time the same fell due was prostrated by fatal disease, and so remained until November 3, 1874, when he died, and during all that time was mentally and physically incapable of attending to his business, and was non compos mentis, and that the existence of the note was not known to plaintiff. Second. That before said note fell due it had long been the custom of the defendant, in like cases, to give notice of the day of payment to policy holders, and such was the uniform custom of insurance companies, and defendant had, in its dealings with John Y. Thompson, complied with such custom. Yet the defendant in this instance failed to give notice of the maturity of said note, although it knew that Thompson was in the city of Mobile, and was sick; that Thompson was ready to pay the note, had notice of its maturity been given, and that the plaintiff had no notice of the existence of the note. Third. That on the 24th of January, 1874, said policy was renewed and extended for one year; that the note was for the residue of the premium for that year, which defendant agreed should be deferred as specified in the note; that by said agreement the policy was not to become void on the nonpayment alone of the note at maturity; but was to become void at the instance and election of defendant, and the defendant did not elect to cancel said policy or take any steps to avoid it, or give any notice of such intention during the life of said John Y. Thompson or since, and still holds said note, against the estate of said Thompson. Fourth. That it was the general usage and custom of defendant not to demand punctual payment of said premium notes at maturity, but to give thirty days' grace, and the defendant had repeatedly so done with said Thompson and others, and this led said Thompson to rely on such len-

iency, and he was thereby deceived and the note was not paid.

The defendant filed a demurrer which put in issue the sufficiency of these replications as replies to the defense set up in the pleas.

John T. Taylor, for plaintiff.
Thomas H. Herndon and John Little Smith, contra.

WOODS, Circuit Judge. The first replication presents the question whether the payment of the premium note was a condition precedent to the continuance of the policy. If no time had been given for the payment of the premium there could be no question that its payment for a year in advance was a condition precedent to the continuance of the policy for that year. The terms of the policy as set out in the pleas make this perfectly clear. Does the taking of a note for a portion of the premium change this rule and make the payment of the note a condition subsequent? That, it seems to me, depends on the agreement of the parties. If the insurance company had simply agreed to continue the policy for a year, and instead of exacting the premium in cash, had consented to take the note of the assured, payable at a future day, undoubtedly the policy would be binding even though the note were not paid at maturity. But according to the pleas, it was expressly stipulated that in case the note were not paid at maturity, the policy should become void without notice to any party or parties interested therein. Ordinarily the payment of the annual premium was a condition precedent. This was changed by dividing the annual premium for the accommodation of the assured into several payments, with the same stipulation in case of nonpayment. This was authorized by the terms of the policy. By the very terms of the contract between the parties, the nonpayment of any of the instalments into which the annual premium was divided rendered the policy void. The fact that a note had been given for the instalment does not change the case, for as soon as the policy became void the note also became invalid for want of consideration. What effect the transfer of the note by the insurance company before maturity would have upon the question it is unnecessary to decide, because no such fact appears in the case. "By taking a note for a portion of the premium, the rights and duties of the insurer and assured remain unchanged. Nor could an admission in the policy that the premium was paid preclude inquiry into the real facts." M'Crea v. Purmort, 16 Wend. 460; Robert v. New England Mut. Life Ins. Co., 2 Bigelow, Ins. Cas. 145; Slaughter v. Hamm, 2 Ohio, 271; 1 Greenl. Ev. § 26.

We must give effect to the contract of the parties. It is plain and explicit, as set out both in the policy of insurance and in the note, that a failure to pay the note at maturity avoids the policy. The payment is, there-

fore, a condition precedent to the continuance of the policy. Roehner v. Knickerbocker Life Ins. Co., 4 Daly, 512; Howell v. Knickerbocker Life Ins. Co., 44 N. Y. 276; Patch v. Phœnix Mut. Life Ins. Co., 44 Vt. 481; Pitt v. Berkshire Life Ins. Co., 100 Mass. 500; Anderson v. St. Louis Mut. Life Ins. Co. [Case No. 362]; Russum v. St. Louis Mut. Life Ins. Co. [1 Mo. App. 228]; Robert v. New England Mut. Life Ins. Co., 1 Bigelow, Ins. Cas. 634. If the payment of the premium was a condition precedent, the fact that the assured was prevented from making payment by illness or other cause beyond his control, does not relieve him from the consequences of nonpayment. Howell v. Knickerbocker Life Ins. Co., supra. The fact that the plaintiff, for whose benefit the insurance was made, did not know of the existence of the premium note, does not change the rights of the parties. Baker v. Union Mut. Life Ins. Co., 43 N. Y. 283. The first replication, therefore, which denies that payment of the note at maturity was a condition precedent to the continuance of the policy and avers the fatal illness of the party whose life was assured as an excuse for nonpayment, is not a good answer to the pleas.

The demurrer to the second replication raises the question, whether, in a case where it has been the custom of an insurance company to give notice that the premium, or a premium note, is about falling due, the failure to give such notice saves the policy from forfeiture when the assured fails to pay the premium. As a general rule, no duty is imposed upon the holder of a note or bill of exchange to give notice to the maker or acceptor of the day of payment, or to demand payment when it is due. It is the duty of the debtor to remember when his obligations fall due, and to find his creditor and pay him. The fact that the creditor has once or twice, or in a great number of instances, given notice to his debtor of the fact that his obligation was about to fall due, does not make it obligatory on him to continue the practice. A failure to give notice does not relieve the debtor from any of the consequences of nonpayment, unless it be averred that the custom to give notice and the omission were fraudulent, for the purpose of throwing the party off his guard. Leslie v. Knickerbocker Life Ins. Co. [63 N. Y. 27,] N. Y. Court of Appeals; Roehner v. Knickerbocker Life Ins. Co., supra; Appleman v. Fisher, 34 Md. 553. But, see contra, Mayers v. Mutual Life Ins. Co., 4 Bigelow, Ins. Cas. 62.

The third replication alleges that after the failure to pay the premium note on October 24, 1874, the defendant company was, by its contract, required to elect, whether it would declare the policy forfeited or not, and that it made no election, and gave the plaintiff no notice of its election to forfeit the policy. A careless reader of the replication might infer that it had reference to some contract or stipulation not already referred to in the previous pleadings. But it is not so averred in the replication; and taking the pleading most strongly against the pleader, this replication only puts a construction on the contract of the parties already set out, and does not purport to set out any new agreement. The express stipulation of the policy was, that it was to become void without notice to any party or parties interested, in case the premium note was not paid at maturity. We cannot ignore this part of the contract. On nonpayment of the note at maturity, both the policy and the note became void. The policy might have been revived by consent of the insurance company during the life of the assured, but without such assent it remained void and of no effect. Mutual Benefit Life Ins. Co. v. French, 4 Bigelow, Ins. Cas. 369; Bliss, Ins. §§ 179, 180.

The fourth replication sets up the fact that it was the custom of the defendant not to exact punctual payment of the premium notes, but to give thirty days' grace for their payment, and defendant had repeatedly so done with said Thompson and others, and had thus led Thompson to rely on such leniency, whereby Thompson was deceived, and the note was not paid. This replication is clearly defective in not alleging that it was the custom of defendant to consider itself bound, without payment of the premium, for thirty days, even in case of the death of the assured within that time. When default was made in the payment of the premium note, at whose risk was the life of the assured during the thirty days' grace? Was it the understanding of the company that if the assured died within thirty days after the maturity of the premium note, it would pay the policy whether the premium note had been paid or not? If such were the fact, it should have been so averred. As the replication now stands, its fair construction is, that it was the custom of the company to receive payment of the premium note at any time within thirty days after its maturity, provided the assured were living at the time of payment. As there is no averment that the assured paid the premium within thirty days, and before his death, the replication is clearly bad. May, Ins. §§ 352–354; Mutual Benefit Life Ins. Co. v. Ruse, 8 Ga. 534; Ruse v. Mutual Benefit Life Ins. Co., 23 N. Y. 516; Pritchard v. Merchants' & Tradesman's Mut. Life Assur. Co., 3 C. B. (N. S.) 622.

In my judgment, the demurrer to all four replications should be sustained. The case appears from the pleadings to belong to that large class in which attempts are made to collect the insurance money without the payment of the premiums according to the contract of insurance. It is the duty of officers of insurance companies, who are acting as trustees for others, to resist all such attempts. The assured should comply with his part of the contract, or be excused therefrom by the act or agreement of the insurance company before any just claim can be set up to the insurance money. There is no ground for a re-

THOMPSON (Case No. 13,966) . [23 Fed. Cas. page 1060]

'covery in this case upon the pleadings as they now stand.

[The case was removed by writ of error to the supreme court, where the judgment of this court was affirmed. 104 U. S. 252.]